DECISION
Defendants West Greenwich Community Rescue Company ("the Rescue Company") and Catherine M. Plante[1] move for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure in the wrongful death action brought by Edmundo Neves, husband of decedent Iris Neves. The complaint alleges that Ms. Plante was grossly negligent in her medical treatment of Ms. Neves, specifically that she improperly placed a tube in Ms. Neves's esophagus instead of her trachea. Mr. Neves also filed suit against the Rescue Company based on Ms. Plante's status as an agent of the Rescue Company, and the alleged grossly negligent act occurred during the course of her agency.[2] Defendants filed the within motion for summary judgment, arguing that the Rescue Company and Ms. Plante, are protected from liability by the public duty doctrine. Additionally, Defendants argue that they are entitled to *Page 2 
the statutory damage caps of the Torts Claims Act, G.L. 1956 §§ 9-31-2
and 9-31-3. For the reasons herein, the Court grants partial summary judgment in favor of Defendants.
 I Facts and Travel
This case arises out of the tragic death of Iris Neves. On the morning of May 6, 2005, Ms. Neves went to her primary care physician, co-defendant Karen Blackmer, M.D. complaining of shortness of breath and rapid heart rate with exertion. Dr. Blackmer referred Ms. Neves for a chest x-ray, which revealed right lower lobe pneumonia, focal air space disease, and an enlarged heart. Dr. Blackmer prescribed antibiotics and discharged Ms. Neves.
On the evening of May 6, 2005, Ms. Neves developed difficulty breathing. Responding to a 911 telephone call, the Rescue Company was dispatched to the Neves home. The rescue personnel, including co-defendant Plante, arrived at the home and found Ms. Neves seated on a couch, unresponsive, with full lungs. Ms. Neves was placed in the rescue vehicle and shortly thereafter stopped breathing. An EKG was administered and demonstrated asystole — the lack of electrical activity or contractions of the heart. Ms. Plante, the only volunteer appropriately certified, attempted to perform an intubation, placing a tube into a patient's trachea through which air is pumped directly into the lungs. Ms. Plante determined the procedure was unsuccessful and performed a second intubation.
Ms. Plante testified at a deposition that this second intubation was successful, whereas the emergency room doctor, John McCue, M.D., testified that the second intubation was also performed incorrectly. Upon Ms. Neves' arrival at Kent County Hospital, Dr. McCue completed a third intubation. Dr. McCue stated he removed the tube from the esophagus and properly inserted it in her trachea, and successfully resuscitated her heart. Tragically, Ms. Neves never *Page 3 
regained consciousness. After several days, Iris Neves was removed from life support and passed away.
The Rescue Company and Ms. Plante move for Summary Judgment, contending there are no genuine issues of material fact and judgment should issue in their favor as a matter of law. They allege: (1) the Rescue Company is an agent of the Town of West Greenwich, entitled to the damage cap protections of the Torts Claims Act, R.I.G.L 1956 §§9-31-2 and 9-31-3. (2) As a governmental agent engaged in a governmental function at the time of the alleged incident, the Rescue Company is entitled to immunity pursuant to the public duty doctrine. (3) Ms. Plante is entitled to summary judgment because there are no facts in the record to create a triable question as to whether or not she was grossly negligent in her care of Neves; and (4) Ms. Plante was a governmental agent engaged in her official capacity at the time of the incident and entitled to governmental immunity.
 I Standard of Review
"Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law."Konar v. PFL Life Ins. Co., 840 A.2d 1115, 1117 (R.I. 2004). A party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial and "cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions."Macera Brothers of Cranston, Inc. v. Gelfuso Lachut, Inc.,740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza,591 A.2d 34, 35 (R.I. 1991)); Accent Store Design, Inc. v. Marathon House,Inc., 674 A.2d 1223, 1225 (R.I. 1996). If the opposing party cannot establish *Page 4 
the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almacs, Inc., 623 A.2d 971, 972 (R.I. 1993). Additionally, Rule 56(d) of the Superior Court Rules of Civil Procedure allows the Court to grant partial summary judgment and issue an order to establish the uncontroverted facts and leave the others for determination at the trial.[3] Russo v. Cedrone, 118 R.I. 549,375 A.2d 906 (1977).
 III Discussion
This Court first must consider whether the Rescue Company should be characterized as an agent of the state. If the Court determines the company is a state agent, then these co-Defendants "would be able to claim immunity under the common law doctrine of public duty, which `shields a governmental entity from liability only when that entity engages in activity that an individual ordinarily would not perform.'"Tedesco v. Connors, 871 A.2d 920, 924 (R.I. 2005) (citingMartinelli v. Hopkins, 787 A.2d 1158, 1167 (R.I. 2001)). On the other hand, if the Rescue Company is not a state agent, "it would be subject to tort liability `in the same manner as a private individual or corporation' under the Rhode Island Tort Claims Act." Id. (quoting G.L. 1956 § 9-31-1(a)). Any such liability is subject to certain monetary limitations if the tortious act complained of was committed while the state was engaged in a non-proprietary function. Id. (citing Sec.9-31-2). *Page 5 
 A Rescue Company's Status as a Municipal Agent
Although the public duty doctrine traditionally applies to actions of a state entity or agency, on occasion it extends to a stateagent where the actions complained of are discretionary activities traditionally performed by the government. Houle v. Galloway SchoolLines, 643 A.2d 822, 825 (R.I. 1994) (holding that a private bus companymay be protected by the public duty doctrine for the designing of school-bus routes and the transportation of students to and from public school, but remanding on the matter of egregious negligence); see alsoCatone v. Medberry, 555 A.2d 328, 333 (R.I. 1989) ("In every case in which we have applied the public duty doctrine, the government or itsagent . . .") (emphasis added). Because the Rescue Company is not a government entity itself, if there is no agency relationship between the Rescue Company and the town, the public duty doctrine would not apply.
"To prove an agency relationship, the following facts must be found: `(1) a manifestation by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) an agreement between the parties that the principal will be in control of the undertaking.'" Powers v. Coccia, 861 A.2d 466, 470 (R.I. 2004) (citingNorton v. Boyle, 767 A.2d 668, 672 (R.I. 2001) (quoting Lawrence v.Anheuser-Busch, Inc., 523 A.2d 864, 867 (R.I. 1987)). Here, many pertinent facts are undisputed. The Rescue Company is a private, volunteer rescue company fully funded by the Town of West Greenwich (aside from modest amounts raised through bake sales and other fundraisers). It is controlled by a Board of Engineers[4], which consists of the chiefs from the four local rescue companies, the Town's Chief of Police, and a member of the Town Council, pursuant to Section 902 of the Town Charter. The Town Charter *Page 6 
also provides that the Town Council retains decisional authority over disposition of fire and rescue equipment purchased with Town funds, and authority over any proceeds generated from the sale of such equipment.West Greenwich Town Charter, Section 902 (G). The rescue utilized in the instant action was owned by the Town.
The Rescue Company has two full-time rescue providers, who are employees of the Town. All other personnel, including Ms. Plante, are volunteers. The company performs no duties outside its rescue work for the Town. When an emergency call comes into the state 911 Emergency Response System for a medical emergency in West Greenwich, it is Rescue Company that responds.[5]
These facts meet the first prong of the agency relationship test. They demonstrate the Town's intent for the Rescue Company to provide emergency medical services for Town residents on behalf of Town. Moreover, the facts show that prong two — acceptance of the undertaking — is met: The Rescue Company performs no other jobs except for the Town and volunteers came forward to provide rescue services for the Town.
Finally, the Town Charter evidences the agreement requirement of the third prong whereby the Town controls the Rescue Company and its undertaking of rescue services. This Court finds, therefore, that the Rescue Company is an agent of the Town, and as such is afforded the protections of the public duty doctrine and may be afforded liability limitation of the Torts Claim Act. *Page 7 
 B Ms. Plante's Liability
As an EMT member of the volunteer rescue squad that attempted to aid Ms. Neves, Catherine Plante is entitled to the protections of G. L. 1956 § 9-1-27.[6] That statute states:
 [no] member of any . . . volunteer rescue squad or member of any voluntary ambulance association, whether the company or squad is incorporated or not, who while on duty and in the performance of that duty voluntary and gratuitously renders emergency assistance to a person in need thereof . . . shall be liable for civil damages for any personal injuries which result from acts or omissions by the persons rendering the emergency care, which may constitute ordinary negligence. This immunity does not apply to acts or omissions constituting gross, willful, or wanton negligence. Sec. 9-1-27.
Additionally, Rhode Island case law restricts EMTs from liability without a showing of gross negligence or willful misconduct.Contois v. Town of W. Warwick, 865 A.2d 1019, 1023 (R.I. 2004) (citing G.L. 1956 § 23-4.1-12)). A Superior Court decision has defined gross negligence as "the intentional failure to perform a manifest duty in reckless disregard of the consequences." Marcouz v. H.P. Leasing,Inc., 1987 WL 859604 (R.I.Super. 1987). Thus, Ms. Plante is liable only if her actions constituted gross negligence.
Defendants contend that Mr. Neves offers no evidence demonstrating gross negligence. Mr. Neves submitted documents inferring that immediately upon Ms. Neves' arrival at the hospital, the emergency room doctor discovered that the tube was in the esophagus, requiring him to reintubate. Additionally, Mr. Neves presents three expert witnesses who testified that Ms. Plante was grossly negligent in connection with her failed attempts at intubation.
The Court agrees that a genuine issue of fact remains. Ms. Plante maintains that her second intubation attempt was successful and that her conduct did not approach the standard of gross negligence. Mr. Neves contends that Ms. Plante's second intubation was inserted into Ms. *Page 8 
Neves' esophagus, not her trachea, and that Ms. Plante either did not use the tests available to her to confirm proper placement, or she failed to act even knowing she had misintubated. The determination as to whether Ms. Plante's actions were grossly negligent involves issues of fact which should be presented to a jury. Accordingly, this Court denies Ms. Plante's motion for summary judgment.
 III Discretionary Government Function
Defendants aver that their actions constitute a discretionary government function and consequentially the limitation of damages contained in the State Torts Claim Act should apply. Additionally, the Rescue Company and Ms. Plante maintain that the public duty doctrine shields them from liability for the wrongful death of Iris Neves. Mr. Neves objects, contending that neither protection applies because Defendants were performing a function capable of being performed by private persons. Thus, the issue before this Court is whether the Rescue Company is performing a discretionary government function when the company's exclusive job is responding to 911 emergency calls for a town, the company is fully funded by the town, the company's employees are town employees, and the town's charter establishes a close relationship between the town and the company.[7]
The liability of the state or any political subdivision is addressed in G.L. 1956 § 9-31-1, which provides: *Page 9 
 The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9-1-25, hereby be liable in all actions of tort in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in this chapter.
Section 9-31-3 further provides:
 In any tort action against any city or town or any fire district, any damages recovered therein shall not exceed the sum of one hundred thousand dollars ($ 100,000); provided, however, that in all instances in which the city or town or fire district was engaged in a proprietary function in the commission of the tort, the limitation of damages set forth in this section shall not apply.
Essentially, the public duty doctrine shields the state from tort liability arising out of discretionary governmental actions that are inherently incapable of being performed by private persons. Defusco v.Todesco Forte, Inc., 683 A.2d 363, 365 (R.I. 1996); Quality CourtCondominiums Association v. Quality Hill Development Corp.,641 A.2d 746, 750 (R.I. 1994); Haley v. Town of Lincoln, 611 A.2d 845, 849 (R.I. 1992). Discretionary government functions also include those activities "not ordinarily engaged in by private individuals." Houle v.Galloway Sch. Lines, 643 A.2d 822, 825 (R.I. 1994); Polaski v.O'Reilly, 559 A.2d 646, 647 (R.I. 1989); Orzechowski v. State,485 A.2d 545, 549 (R.I. 1984). The determination as to whether or not an activity is a government function is fact-specific, and the analysis must be functional, rather than abstract. O'Brien v. State, 555 A.2d 334, 338
(R.I. 1989). If the court determines the activity is one not ordinarily performed by a private person or corporation, the Torts Claims Act and public duty doctrine will limit or shield the state actor from liability.
Mr. Neves contends that performing an intubation and providing ambulance services are actions regularly performed by private individuals and companies and, therefore, the actions contested here are not eligible for the protections of the Torts Claim Act and public duty *Page 10 
doctrine. Although the Rhode Island Supreme Court has never explicitly decided the precise issue of whether ambulance services are a government function or not, the Superior Court has found that such functions are governmental for purposes of the public duty doctrine. See Patino v.Suchnik, 1998 R.I. Super. LEXIS 79 (R.I.Super.Ct. 1998) (Williams, J.) (The Superior Court was asked on rehearing to find that "ambulance activity is an activity that is normally performed by private individuals" but the Court refused to vacate the prior Order). Additionally, other jurisdictions presented with this issue have affirmed the governmental nature of volunteer rescue services for purposes of their state's public duty doctrine (or torts claims act).See Omelenchuck v. City of Warren, 647 N.W.2d 493 (MI 2002) (holding that the provision of emergency medical services is a governmental function, and not a proprietary function); Edwards v. Portsmouth, 237 Va. 167 (Va. 1989) (holding that ambulance services are akin to the provision of hospital services and, therefore, an exercise of a governmental function); King v. Williams, 449 N.E.2d 452 (OH 1983) (finding "emergency medical services fit within the classic definition of governmental functions as those duties which are imposed on the state as an obligation of sovereignty, such as protection of the citizens from crime, fire, contagion, or preserving the peace and health of citizens"); Brantley v. City of Dallas, 545 S.W.2d 284 (Tex.Civ.App. 1977) (holding "the operation of an emergency ambulance service by a city is a governmental function").
Use of the word `rescue', interchangeably with that of `ambulance', may give short shrift to the manner in which rescue services are generated and regulated in Rhode Island. At oral argument, the Court queried about the role of rescue services, noting that only governmental rescue companies respond to emergency medical calls on behalf of the state or municipalities.[8] *Page 11 
Only rescues seem to stabilize patients for transport from the scene of onset to hospital emergency rooms. In Rhode Island, (apparently unlike most of the nation), ambulance companies appear to be private companies involved in moving patients who have previously been stabilized or treated (e.g. from hospital to nursing home). They usually charge for their services. While the Court cannot and does not make findings of fact on this motion for summary judgment, it hesitates to apply ambulance cases interchangeably with rescue cases and cautions that, in Rhode Island, the responsibility which the statutory scheme imposes on rescue companies is quite significant.[9]
Nevertheless, in this instance, the Rescue Company and Ms. Plante responded to an emergency call placed to 911, the state run emergency hotline. A private company unrelated to the Town is unable to respond to the calls for rescue services.[10] Consequently, this Court holds that rescue services provided by the Rescue Company and Ms. Plante were discretionary governmental actions. Therefore, the public duty doctrine shields these Defendants from liability unless either the special duty or egregious conduct exception applies. If, and only if, that is the case, the Torts Claim Act is applicable, limiting the amount of damages to the statutory limit set forth in R.I.G.L. section 9-31-3.
 Exceptions to the Public Duty Doctrine
Although the Public Duty Doctrine protects certain defendants from tort liability, two exceptions exist: special duty and egregious conduct. When these situations apply, a government, or its agency, remains liable for its tortuous conduct. For the egregious conduct exception to apply, a plaintiff must show the state knows "that it has created a circumstance that *Page 12 
forces an individual into a position of peril and subsequently chooses not to remedy the situation." Verity v. Danti, 585 A.2d 65 (R.I. 1991). To prove egregious conduct, the following elements must be established: (1) the state, in undertaking a discretionary action or in maintaining or failing to maintain the product of a discretionary action, created circumstances that forced a reasonably prudent person into a position of extreme peril; (2) the state, through its employees or agents capable of abating the danger, had actual or constructive knowledge of the perilous circumstances; and (3) the state, having been afforded a reasonable amount of time to eliminate the dangerous condition, failed to do so.Haley, 611 A.2d at 849.
As discussed above, under Ms. Plante's liability, Mr. Neves presented evidence regarding gross negligence which directly contradicts the evidence of the Defendants. Ms. Plante states that the second intubation of Ms. Neves on the way to the hospital was performed correctly, but Mr. Neves' witness claims that Ms. Neves was still incorrectly intubated upon arrival at the hospital. A genuine dispute over a material fact remains — that being whether Ms. Plante's actions were "egregious" or not. Therefore, the issue cannot be decided on summary judgment. Further, because Ms. Plante was acting in her official capacity as an EMT, serving as an agent of the Rescue Company, the Rescue Company can be held liable for Ms. Plante's actions. Therefore, this Court denies the motion for Summary Judgment for both Ms. Plante and the Rescue Company. Furthermore, because there is a dispute over a material fact under the egregious conduct exception, it is not necessary for this Court to address the special duty exception now.
 Conclusion
After consideration of the parties' oral arguments and their respective memoranda, this Court grants partial summary judgment. This Court finds that the Rescue Company, and its *Page 13 
agent, Ms. Plante, are state agents, and consequently, the Torts Claim Act and public duty doctrine are applicable. However, because a genuine question of fact exists as to whether Ms. Plante's actions amounted to gross negligence, summary judgment must be denied. Partial summary judgment is granted to the extent that plaintiffs must establish gross negligence to establish liability.
Damages are limited per R.I.G.L. §§ 9-31-2 and 9-31-3 as the provision of rescue services is non-discretionary and no exception applies.
[1] Ms. Plante is a certified Emergency Medical Technician.
[2] Plaintiff has also sued Karen Blackmer, M.D. and University Medicine Foundation, Inc. but they are not parties to this summary judgment motion.
[3] "Case Not Fully Adjudicated on Motion. If on motion under this rule judgment is not entered on the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts are actually in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the act the facts so specified shall be deemed established, and the trial shall be conducted accordingly." Super. R. Civ. P. 56(d).
[4] Section 902 of the West Greenwich Town Charter states, "[f]ire prevention, fire fighting and emergency medical rescue services may be provided to the Town by Volunteer Fire and Rescue Companies as directed by the Town Council and which shall be governed by a Board of Engineers."
[5] 911 calls are governed by state law. R.I.G.L. ch. 39-21.
[6] Mr. Neves does not dispute that he sued Ms. Plante in her official capacity, and not in her individual capacity.
[7] The West Greenwich Town Charter has an entire section devoted to "Volunteer Fire and Rescue Companies" Section 902 state, "Prevention, fire fighting and emergency medical rescue services may be provided to the Town by Volunteer Fire and Rescue Companies as directed by the Town Council and which shall be governed by a Board of Engineers." Although the Charter does state "[t]he Companies shall not be departments of the Town" and "[e]ach Company shall retain the autonomy provided in its charter subject to governance by the Board of Engineers, the Charter continues on to list the duties of the Board of Engineers as preparing an annual budget for the Companies, preparing recommendations to the Town Council on purchase of all fire-fighting and rescue equipment, and meeting on a regular basis to consider issues related to fire and rescue protection within the Town.
[8] The Court notes that it is aware of no other `private' rescue company, other than that of West Greenwich, one of our state's most rural towns.
[9] Rescue personnel are treated separately and distinctly in statutes and regulations. See R.I.G.L. §§ 5-38.3-2, 9-1-27, 23-1-1, 23-4.1-1 et seq,, 23-28.20-12, 31-3-44, 31-26-3, 39-1-1, 39-21.1 et seq., 45-22.4-3, and 42-62-10. R.I. G.L. 31-3-44 even provides separate registration plates to the separate types of motor vehicles.
[10] The Rescue Company makes no private `ambulance type' calls. *Page 1